A jury found appellant guilty of burglary under an indictment charging in pertinent part that he "did in the night time with intent to steal, break into and enter a shop, store, warehouse, or other building of City of Bessemer Board of Education, City Vocational School, in which goods, wares, or merchandise was kept for use, sale, or deposit." The court fixed his punishment at imprisonment in the county jail for twelve months and sentenced him accordingly.
The undisputed evidence shows that one Wayne Richardson, accompanied by appellant-defendant, broke into and entered the premises described in the indictment on the night of May 4, 1979. Wayne Richardson testified that he and Malcon Brown went in to get a carburetor to put on Brown's automobile. Brown testified that they went into the building to play basketball. While the entry was being made, the burglar alarm was sounded and officers arrived before the intruders left the inside of the building. They arrested Richardson on the outside of the building, but appellant was not captured until the following day.
Appellant's first three contentions that the judgment of the trial court should be reversed are directed at the action of the trial court in admitting in evidence, over the objections of defendant, a statement written by an officer that defendant signed wherein he admitted an entry into the building with Richardson. The ruling of the trial court was made after a hearing, out of the presence of the jury, as to the voluntariness of the statement and as to whether defendant had knowingly and intelligently waived his right to counsel at the expense of the State and to freedom from self-incrimination. Testimony of the officer taking the statement was to the effect that he read to defendant the contents of the "Miranda Card," explained to the defendant what he had read, and asked defendant if he understood what had been read to him. The officer said that the witness answered in the affirmative and stated that he desired to make a statement, which he did, and thereafter signed the statement. The officer said that defendant stated that he could not read, but that he could sign his name.
Defendant also testified out of the presence of the jury as to what was said and done by the officer taking defendant's statement and as to defendant's ability to understand what the officer had told him. He said that he was twenty-three years of *Page 515 
age, he had gone to the eleventh grade in school, and was employed by the city of Bessemer to work on a garbage truck and at different jobs. He said he could not read, but that he signed his name to the statement. He vacillated as to whether the officer had read to him the contents of the "Miranda Card" by at first denying that the officer did so, but on cross-examination he acknowledged that the officer did. Portions of defendant's testimony out of the presence of the jury are as follows:
 "Q. Did you understand when Mr. Price told you about your right, did you understand what he was talking about?
"A. Well, not exactly.
 "Q. Did you understand when he said you had a right to an attorney?
"A. No, sir.
 "Q. Did you understand that you did not have a right to give him a statement or to sign that?
"A. I didn't know what to do.
"Q. You didn't know?
"A. (Witness shakes head).
 "Q. And, you are telling the Court you did not do that voluntarily; is that right? You did not do that because you wanted to?
"A. No, sir. I didn't do it because I wanted to."
On cross-examination, defendant testified, inter alia:
 "Q. Now, you recall Sgt. Price asking you to read these rights to you that he just read off that card?
"A. Yes, sir.
 "Q. Do you recall that? Do you remember him reading you those rights?
"A. Yes, sir.
 "Q. Do you remember him telling you that you could have a lawyer?
"A. He told me about it.
 "Q. He told you you could have a lawyer? And, he also told you that you didn't have to say a thing; didn't he? He told you that you didn't have to make a statement at all, that you could remain silent; didn't he?
"A. No, sir, I don't remember that.
 "Q. Do you remember him reading the rights he just read off that card up here?
"A. Yes, sir.
 "Q. You remember at the Police Station him reading that to you?
"A. Yes, sir.
 "Q. You remember him reading that you had a right to remain silent?
"A. Yes, sir.
". . .
 "Q. I'm talking about Sgt. Price, the one that just came up on the stand. Before you gave him a statement he had read those rights to you off that card?
"A. Yeah, he read it to me.
 "Q. Then, you told him you understood those rights at that time; didn't you? You told him you understood what he read to you?
"A. But I didn't understand what he was saying.
"Q. But you told him you did?
"A. Yeah, I told him but I didn't know."
There is no contention that defendant was in any way coerced by the officer taking his statement, or by any other law enforcement personnel. In our review of the trial court's ruling on the admissibility of the extrajudicial statement of the defendant, we are impressed especially by the following part of defendant's testimony relative to the reading to him by the officer of the contents of the card from which he read:
 "Q. And, you heard him read it just now. Is that the way he read it to you, the way he just read it to the Court?
"A. Yes.
"Q. And, you didn't understand that?
"A. No, sir."
We do not know, as the trial court did, how the officer, as a witness, read the card to the court. Perhaps he could have read it in such a way as to make it difficult for most persons to understand; but we are not in as good a position as the trial court was to determine whether the defendant did in fact sufficiently understand what had been read to him to show that his extrajudicial statement was voluntarily, understandingly *Page 516 
and intelligently made. We are not convinced that the trial court was in error in admitting the statement in evidence.
In considering the question of the admissibility of defendant's extrajudicial statement, we have not overlooked the contention now made by appellant that bearing on that question is considerable evidence of substantial mental retardation of defendant, including the testimony of a witness who was one of defendant's teachers "about four years on the elementary level and two years in high school" who said, "His I.Q. was about 55." This testimony was offered after defendant's extrajudicial statement had been admitted in evidence and after defendant had presented evidence by himself and other witnesses on the merits of the case in the presence of the jury, had rested, and had been allowed to reopen his case. Even so, we conclude that such evidence is not sufficient to cause us to change our view that the statement was properly admitted and should have been allowed to remain as evidence in the case. In emphasizing the I.Q. of 55, appellant argues that support for his contention as to admissibility of the statement is to be found in Hines v.State, Ala.Cr.App., 384 So.2d 1171 (1980). We do not agree. InHines, "the defendant was at least moderately mentally retarded with an I.Q. of 39." This, however, is not the only difference. The evidence in that case was replete with illustrations of behavior of defendant and testimony of psychiatrists and other experts who had examined him that led to the only reasonable conclusion possible that no case had been found "involving mental retardation and the voluntariness of a confession wherein the degree of mental retardation was as extreme as that presented" therein and that under all of the circumstances shown by the evidence "the defendant could not have made a `knowing and intelligent' waiver of his constitutional rights," which rendered his confession inadmissible. 384 So.2d at 1181. The correct conclusion reached in Hines, the thorough analysis of the pertinent evidence therein, and the valuable collation of authorities on the subject strengthen our conclusion that the trial court correctly permitted defendant's statement in the instant case to be and remain in evidence.
Another asserted ground for a reversal is based on the ruling of the court as shown by the following during the closing argument of counsel for the State:
 "MR. TUCKER: He gave that statement voluntarily and freely. I think we have shown that. I don't think they have disproven that. He gets up here now when he is on trial for this crime and testifies he didn't know what he was doing. That is not anything unusual. I see it all the time. People love to play dumb when the heat is on them.
 "MR. JACKSON: Your Honor, I object to that line of questioning (sic).
"THE COURT: Overruled."
The context of the argument is not shown. It is clear, however, that it was referable to the extrajudicial statement made by defendant to the officers and to his testimony. We cannot approve of the two sentences: "That is not anything unusual. I see it all the time." Attorneys should be careful in their arguments to the jury to refrain from an injection of their own personal experience or knowledge in support of their argument, as distinguished from what they deem to be reasonable inferences to be drawn from the evidence. This is especially true as to arguments by prosecuting counsel in criminal cases, for the reason that jurors generally know that prosecuting attorneys usually have had more experience in trying criminal cases as attorneys than attorneys in general. What they tell a jury as to their experience during the trial of a criminal case is more likely to influence a jury than what is told a jury by attorneys in general. We think counsel for the State should not have said: "That is not anything unusual. I see it all the time." We do not think that any of the rest of the quoted argument was subject to a valid objection. If there had been a specific objection to either or both of the two sentences quoted that called attention of the court to the vice of them, we think the court should have sustained such an objection. We are puzzled *Page 517 
by the statement, "I object to that line of questioning." If it was directed at the last sentence of the quoted argument, it was not a valid objection, we think. If it was meant to be addressed to either or both of the two preceding sentences, the court had no way of knowing it and could well have been led to believe that it was addressed to all that counsel for the State argued as shown by that part of his argument that is quoted above in full from the excerpt of the transcript of the argument of counsel for the State. We do not know what was meant by the word "questioning." The court reporter evidently thought that the argument was made to all of the excerpted portion of the argument, and the parties on appeal have not treated it otherwise. The trial court should not be placed in error for overruling the objection.
Appellant in a blanket manner charges error in the refusal by the court of defendant's requested written charges numbered 4, 5, 6, 7, 8 and 10. Charges 4, 6 and 10 relate to the requirement of unanimity of the twelve jurors in returning a verdict. The principle stated therein was substantially covered by parts of the court's oral charge as follows:
 "I charge you, ladies and gentlemen, whatever verdict you reach must be the verdict of each individual juror. It must be a unanimous verdict . . . I remind you again, what ever verdict you find must be the verdict of each and everyone of you."
Defendant's refused charge 5 is almost identical with defendant's given charge 9:
 "I charge you, ladies and gentlemen of the jury, that if, upon considering all the evidence, you have a reasonable doubt about the guilt of the defendant, arising out of any part of the evidence, you must find the defendant not guilty."
Defendant's refused charge 7, "If you have a reasonable doubt of defendant's guilt growing out of the evidence or any part of it, you must acquit him," is covered by the portion of the court's oral charge as follows, ". . . if any or all of the evidence after considering all of the same, raises in the mind of the jury a reasonable doubt as to the guilt of the defendant, you should acquit him." The same portion of the court's oral charge also covers defendant's requested charge 8:
 "I charge you, ladies and gentlemen of the jury, if, after considering all of the evidence in this case together and in connection, you have a reasonable doubt of the guilt of the defendant, from the whole evidence or any part of the same, you should acquit the defendant."
The court was not in error in its refusal of any of defendant's requested written charges.
Appellant's only other insistence on error is in two parts: (1) that the State did not prove "that appellant was one of the alleged black males to enter the Center" and (2) that it "did not prove the necessary requisite intent to steal or commit a felony." As to (1), the undisputed evidence shows that defendant was one of said males. As to (2), the issue was one for the jury to determine. It is not for us to say whether the jury was correct in that determination. If it were, we would have some misgiving in concluding that it was, which misgiving would be largely because of the good reputation of defendant as shown by the witnesses who testified in his behalf, the apparent lack of any previous criminal record, defendant's particular subnormal mentality and all the other circumstances. We are more concerned about the effect of his mental retardation upon his ability to discern whether his conduct constituted a felonious entry, as distinguished from a non-felonious unlawful entry, than we are about the effect of his mental retardation upon his ability to understand what he had stated to the officer and the officer had stated to him when he signed the written statement introduced in evidence. This would not be true if he had accompanied another in his breaking into and entering a dwelling or a store. The fact that the trial court fixed defendant's punishment at the minimum provided by law indicates the possibility that it had some doubt as to defendant's intention to steal. Notwithstanding *Page 518 
the firmness of any belief that there is no error in the record prejudicial to defendant, we think, in the light of defendant's good reputation and his previous commendable law-abiding behavior, it should be stated, for the benefit of whom it may ever concern, that this Court hopes, with a feeling of considerable confidence, that defendant will prove worthy of any trust hereafter reposed in him by others.
There is no error in the record prejudicial to defendant, the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.
DeCARLO, J., concurs in result only.