A jury found appellant guilty of robbery in the first degree. The court first fixed his punishment at imprisonment for thirty years but reduced it to twelve years.
The alleged victim, Dan Wilson, Jr., testified that on the night of December 15, 1980, he was in an automobile with the defendant and four other young men in Montgomery. The gist of his testimony as to the alleged crime is found in the following part of his testimony:
 "Q. Just tell this Jury what happened when y'all were riding around in the car after you went to the gas station.
 "A. Well, after they left the gas station and got the gas, they rode around over by Alabama State and they dropped a man off, and after they dropped a man off, they came back towards Fairview, got on Fairview, turned down Goode, and drove up in the back of Lanier, and they started researching [sic] me again, taking off my boots —
"Q. Started what?
 "A. Researching [sic] me again, taking off my boots, and made me got out of the car and with them having the gun on me I was begging them not to do anything to me, so, as soon as I got out I said, `Please, don't hurt me,' and the dude busted me in the face with a gun, and then he told me not to say nothing, so I didn't say nothing. So, they searched me right there by the car, and in my watch pocket they found some more money on me, and then he hit me again and he walked me away from the car and one of them kicked a keg up under me and then after then, the next thing I know all of them was kicking me and hitting me and stomping me and stuff, and I balled up in a knot, and I stretched back out and they did the same thing. And then after then one of them picked me up by the hair and walked me about five or ten feet away from the car and threw me down in some bushes and put their feet in my face and said, `Bitch, you wouldn't be able to tell nobody," and after the gunshot, it made so much noise, I discovered I wasn't unconscious, so they ran back to the car and I jumped up and ran to the first house I got to, and I saw the car coming again, so when I got to the man's house I ducked down by a post on his porch, and after the car passed I was knocking and ringing the man's doorbell real hard and he let me in and gave me a towel and let me call my father and mother and they came to pick me up and took me back home and called the paramedics."
Inasmuch as there is no contention that the evidence in the case was not sufficient to support the verdict of the jury and we think there is no reasonable basis for such a *Page 853 
contention, we see no occasion for any further recital of the evidence, except as it may pertain to issues presented by appellant, which we now consider.
One of the witnesses for the State was Jimmy Timmons, one of the persons in the automobile at the time of the alleged robbery. Appellant complains that the trial court erroneously permitted the witness to be asked questions as to previous statements made by the witness that were inconsistent with his testimony, with references to the following part of his testimony on direct examination:
 "Q. Now, you say you don't remember seeing Rodney Daniel Junior kicking and beating that fellow, Dan Wilson, Jr.?
"A. Not that I can remember.
 "Q. I want to refresh your recollection here. Did you have an occasion to give a statement to the police in connection with this offense?
"A. Yes, sir.
"Q. Is that your signature, Jimmy Timmons?
"A. Yes, sir.
 "Q. I will ask you here if you said on that occasion —
 "MR. POOLE: Your Honor, we object to Counsel's attempt to impeach his own witness. This is his witness.
"THE COURT: Let me hear from you, Mr. McKnight.
 "MR. McKNIGHT: Well, Judge, I am surprised at his testimony. He had said before that this man did —
 "THE COURT: All right, go ahead. Overrule the objection.
 "MR. McKNIGHT: I just want to refresh his recollection.
"THE COURT: All right. Go ahead.
 "Q. Mr. Timmons, I'll ask you if on that occasion if you didn't tell the police that Rodney and Jeff started kicking him and hitting him and all three of them were hitting and kicking him?
 "A. Well, like I told my lawyer, I don't remember what was on that statement. At the time I was intoxicated.
"Q. You were intoxicated?
"A. Yes, sir."
Appellant does not challenge the right of a party to interrogate his own witness as to a previous statement by him inconsistent with his testimony, but he argues that he cannot do so by merely claiming "surprise." He says that the questioner must be "genuinely surprised." Without disagreeing with appellant on the point, we find no error in the quoted action of the court, as the circumstances, we think, are sufficient to show that the trial court was justified in concluding that counsel for the State was "genuinely surprised" by testimony of the witness that was inconsistent with the written statement previously made by the witness. The rule is thus stated by Judge McElroy:
 "Ordinarily, a suggestion of counsel that he is surprised at the testimony of the witness called by him is a sufficient basis for the trial court's allowing such counsel to elicit testimony from the witness of a prior inconsistent statement. However, if it clearly appears that counsel is not surprised, as would usually be true where the witness' testimony on a former trial of the instant case was the same as his present testimony, it is error for the trial court to allow the party to elicit testimony from the witness that he made a statement inconsistent with his present testimony."
 Gamble, McElroy's Alabama Evidence, § 165.01 (7)(c) (1977).
Another issue presented by appellant has as its target the following portion of the testimony of the same witness, Jimmy Timmons, on direct examination:
 "Q. Well, anyway, on that occasion, you signed this statement, and it says right here Rodney, and that is the man seated here at the table, wasn't it? That is the only Rodney in the car, wasn't it?
 "MR. POOLE: Your Honor, we object to him using the statement where no proper predicate has been laid for the use of that statement.
"THE COURT: Overrule the objection." *Page 854 
Appellant relies upon and quotes the following statement in Gamble, McElroy's Alabama Evidence, § 157.01 (2) (1977):
 "The basic reason for the requirement that the predicate question specified time, place, content of the supposed statement, and the person to whom made, is to enable the faculties of the mind of the witness to be put in motion and his memory aided by the train of ideas which such circumstances would be likely to suggest with reference to the subject matter under inquiry and thereby be aided in recalling to memory whether he made the statement; and, if he recalls making it, to give his explanation of the apparent conflict between his testimony and such prior statement."
Immediately thereafter, in § 157.01 (3), we find:
 "The rule of this sub-section does not require perfect precision in the predicate questions with respect either to the content of the supposed statement, the time when, the place where, or the person to whom made. The rule is not ironclad and perfection is not required."
We cannot agree with appellant's contention as to the necessity for precision in the laying of a predicate for impeachment of a witness by showing that he previously made a statement in conflict with his testimony. The transcript shows that there was no effort on the part of the State to attempt to impeach the witness by showing by the testimony of someone other than the witness that he had previously made a statement inconsistent with his testimony; Judge McElroy in his quoted statement is not referring to an effort to refresh the recollection of "one's own witness," as in the instant case, but to the more usual situation when one is attempting to impeach a witness for the opposing party by showing a previous inconsistent statement made by the witness. There is not here involved any effort on the part of the State to furnish a predicate for the introduction in evidence of the testimony of a person other than the witness being interrogated at the time that such witness had previously made an inconsistent statement. Such testimony would have been inadmissible.Randolph v. State, 331 So.2d 766, cert. denied, 331 So.2d 771
(1976).
During the redirect examination of Dan Wilson, Jr., the alleged victim, a statement previously made by him was admitted in evidence over the objection of the defendant. Appellant urges such action of the court was erroneous, saying that the action authorized "the proponent of the witness to support his witnesses' credibility by evidence that the witness has made a statement of the same tenor as his present testimony," which, as he correctly contends, should not be allowed. Long v. Whit,197 Ala. 271, 72 So. 529 (1916); Childs v. State, 55 Ala. 25
(1876). The transcript does not support the implication that the statement (a written statement of the witness) was offered in evidence to bolster the testimony of the witness. On the other hand, the transcript clearly shows that defendant'scross-examination of the witness referred to several parts ofthe statement, and on redirect-examination, the following occurred:
"BY MR. McKNIGHT:
 "Q. Dan, is this a copy of the statement that you signed on that occasion that Mr. Poole has been asking you about?
"A. Yes, sir, I think so.
 "MR. McKNIGHT: Judge, we offer this in evidence at this time.
"THE COURT: All right.
 "MR. POOLE: We object. It is clearly inadmissible. You cannot use a prior statement of a witness to bolster his testimony.
 "THE COURT: All right. Normally, that is true, but when you have introduced part of it, I think it is admissible to introduce all of it.
 "MR. McKNIGHT: May I show it to the jury please, Judge?
"THE COURT: All right."
There is no contention that portions of the statement that were read in the presence of the jury were not so interwoven with non-contradictory parts of the statement as to make it impracticable to separate the one from the other. In this circumstance, there *Page 855 
was no error in the admission of the statement as a whole. Byrdv. State, 51 Ala. App. 234, 283 So.2d 683 (1973).
During a recess after the conclusion of the testimony of Dan Wilson, Jr., counsel for defendant said:
 "Judge, we move for a mistrial at this time on the grounds that in that statement of Dan Wilson, Jr., that was admitted into evidence over objection, it sets out the charges against Rodney Junior, as well as the co-defendants, assault, robbery, and kidnapping. It is our position that the jury is now allowed to know of the other charges against the defendant. He is being tried solely on the robbery charge. Now, they have been apprised of the additional charges of assault and kidnapping by Rodney Junior and I think that would unduly prejudice him in the eyes of the Jury."
The court then said:
 "Having heard the testimony of Mr. Wilson already, it is my conclusion based upon his testimony and your cross-examination of him that it is now admissible and that your motion is denied."
As defendant's counsel had been handling the statement during his lengthy cross-examination of the witness as to the contents of the statement, we think it was too late for him to raise the point made by him after the conclusion of the testimony of the witness. Moreover, the development did not warrant the grant of defendant's motion for a mistrial, which was the only action invoked by the defendant. Appellant now says, "it certainly could have been a simple matter for the Court to instruct the District Attorney to blot out that portion of the statement so that the jury could not see it." We do not disagree therewith. Perhaps the court would have done so if it had been so requested. It was not in error in denying defendant's motion for a mistrial.
During the closing argument of counsel for the State, he said:
 "If this kid is turned loose, he is going to be out on the street saying, well, gosh, we can rob a guy, and we can beat him up, and we can booze it up and we can be on dope, and we can go in Court and talk about it and all I have got to do is get me a good lawyer — We'll jump on the victim and we'll jump on the police department, and they'll turn me loose. —
 "MR. POOLE: Your Honor, I hate to interrupt but that is the second reference that has been made to dope, that they were looking for dope, and I don't think there was any evidence from the stand — the closing argument has to be based on reasonable inferences from the evidence and there was no evidence and that is the second mention of being on dope. There was no evidence that he was on dope.
 "THE COURT: Well, first, I am going to overrule your objection and tell the jury that when the gentlemen stand up and argue the case to you they are arguing their case to you, and that is not evidence in the case. You heard the evidence as it was presented up here, and you draw the conclusions as to what the evidence was, and state to you that this is argument in the case and that is what Mr. McKnight is doing. I will permit that to be argument to the jury and not evidence.
"Continue, Mr. McKnight:"
Notwithstanding the ground of defendant's objection to the effect that the argument as to "dope" was not based on any evidence in the case, we find that defendant testified that after the incident constituting the alleged crime, he and his companions other than Dan Wilson, Jr., "drunk a six pack of beer, smoked some reefers." There were other references in the testimony as to the smoking of marijuana or reefers, including the testimony of Wayne Jeffrey Wilson who testified that he had pleaded guilty to robbery of Dan Wilson, Jr. on the occasion under consideration and thus concluded his testimony on direct examination by the State:
 "Q. The reefer that was taken from Dan Wilson, was that what you went over to Willie Ben Alford's house and smoked?
"A. Well, like we had some of our own, too. *Page 856 
 "Q. Well, are you saying you smoked your own and didn't smoke Dan Wilson's?
"A. No, we smoked some of all of them."
Although most of the testimony as to marijuana or dope seemed to relate to a time after the alleged robbery, such evidence, when considered together with the unquestionably weird behavior, of those concerned, furnished a basis of an inference that some of them, at least, were under the influence of dope. The court was not in error in overruling defendant's objection to the argument.
At the conclusion of the redirect examination of Dan Wilson, Jr., the trial court proceeded to ask him some questions which obviously were intended to clarify whether there was sufficient light for the witness to testify as to what he said he had seen. There was no objection by defendant to any of such questions. It was not until after the witness had completed his testimony and after defendant had moved for a mistrial out of the presence of the jury that defendant complained of the court's action in asking the witness Dan Wilson, Jr., the questions as to how well he could see on the occasion of the alleged crime. He did so by making such action of the court another ground for his motion for a mistrial. The court then said:
 "Oh, I understand that. I didn't think I was asking him any questions that they had asked. I frankly felt like it was to your man's benefit by that question being made clear, because he had indicated that he was there, he had said he was there, and I wanted to know if he could see. Frankly, I felt like it was to your benefit. I just wanted to find out what he was saying. You know, sometimes he said he couldn't and sometimes he could."
The court further said:
 "I hope the Jury is smart. I hope the Jury was trying to determine that he appeared to be confused about identifying people specifically as opposed to being able to see people, and that is what I was trying to elicit. That's all. I mean, I am explaining it to you, not for the record, but explaining it to you what I was trying to bring out."
One of the questions asked the witness by the court, "Did all five people in that car participate in the, when they began to hit you and that sort of thing?," would probably have been subject to a valid objection by defendant, which appellant assigns now but did not assign on the trial, to the effect that it called for an unauthorized conclusion and testimony that would have been invasive of the province of the jury. To such a ground the attention of the court was never called by defendant. No reversible error is to be found in the action of the court in, or as to, the court's interrogation of the witness Dan Wilson, Jr.
Much of the court's oral charge to the jury was devoted to that part of the new Criminal Code of Alabama, Code of Alabama 1975, Tit. 13A, that deals with the criminal liability of an individual that is based upon the "behavior of another." The court read § 13A-2-23, which provides:
 "A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:
 "(1) He procures, induces or causes such other person to commit the offense; or
 "(2) He aids or abets such person in committing the offense; or
 "(3) Having a legal duty to prevent the commission of the offense, he fails to make an effort he is legally required to make."
As the jury was about to retire, the following occurred:
 "A JUROR: May I ask a question now, or do I do that later?
"THE COURT: Well, you can ask it now.
 "A JUROR: I would like to have the statute defining aiding and abetting re-read.
"THE COURT: All right, you all be seated."
The court then re-read section 13A-2-23 and made some additional comments. Thereupon, out of the presence of the jury, *Page 857 
counsel for defendant excepted "to the Court not charging the jury that one's mere presence alone at the scene of where a crime is taking place, that is, mere presence alone, is not enough to convict." Upon the resumption of the hearing in the presence of the jury, the following occurred:
"THE COURT: All right. What do we have?
 "A JUROR: One of our jurors would like to [sic] section concerning aiding and abetting re-read again with the definition and she may have a question.
 "THE COURT: All right, as long as it doesn't pertain to any of the facts.
 "A JUROR: No, sir, it would strictly be interpretation.
 "MR. POOLE: Your Honor, could we have a meeting at Bench before you start?
"THE COURT: We will go to chambers."
In the in camera hearing that followed, counsel for defendant said:
 "Judge, in conjunction with your charge, I would again request that the Court instruct the Jury that mere presence alone at the scene of where a crime is taking place without any participation or encouragement or aiding, etc., is not a crime."
The court then said:
 "I won't elaborate that much but I will say that mere presence alone, as I give that charge, I will make that phrase."
There followed another hearing in the presence of the jury in which the court further charged the jury orally, which was concluded as follows:
"Is there another question?
 "A JUROR: The question was on the having a legal duty [the language found in § 13A-2-23] — That sentence — fails to do —
 "THE COURT: Well, you would have to determine from the law whether or not a defendant had that legal duty to stop the offense, and if he has that legal duty that he failed to make an effort he is legally required to make.
 "So, you have three elements there than [sic] can be complicity. One, procures, induces, or causes such other person to commit the offense, or aids and abets, or having a legal duty to prevent the commission of the offense and fails to make an effort he is legally required to make.
"You may retire.
 "WHEREUPON the Jury retired at 12:02 P.M. to the Jury Room to continue their deliberations.)
 "MR. POOLE: Your Honor, we must respectfully except because under the law Rodney Junior would absolutely have no legal duty to prevent the commission of the offense, and we would ask the Court to instruct that he has no legal duty."
There was then a colloquy among the court and counsel for the respective parties, and the hearing in the presence of the jury was resumed. The court then supplemented its oral charge to the jury by charging, inter alia, that the jury "disregard" what it had been charged about one having the "legal duty" to prevent the commission of a crime. Promptly thereafter, the following occurred:
"THE COURT: Gentlemen?
"MR. POOLE: Satisfied, Your Honor."
We are not in disagreement with the contention of appellant that the trial court should not have injected into its oral charge the provision of § 13A-2-23 (3). The provision would be necessarily troublesome in a case in which it would be applicable. It was for a time unnecessarily troublesome in the instant case, in which it was not applicable. However, there is no validity in appellant's present complaint as to it for the reason that its withdrawal from the consideration of the jury removed all harm and vexation that it caused and for the additional reason that defendant's counsel expressed satisfaction at the action of the court in excising it from its oral charge.
The only other issue presented by appellant is as to whether defendant was accorded his right of allocution prior to the court's imposition of the sentence. About three hours after the discharge of the jury in the case, a sentencing hearing was *Page 858 
conducted at which defendant and his attorney appeared. At the conclusion thereof, the following was said:
 "THE COURT: All right. Well, I've reviewed your pre-sentence report and I've reviewed your charge of burglary and I think you are guilty as the Jury thought you were guilty, but I try not to let them know it. I just listen to the evidence like they did. And taking into consideration that the man was shot and could have easily been killed, I sentence you to thirty years in the penitentiary — Have you got anything to say prior to the imposition of sentence?
 "THE DEFENDANT: Well, I was going to ask you if I could have some sort of probation.
"THE COURT: Anything else?
"THE DEFENDANT: No, sir.
 "THE COURT: I sentence you to thirty years in the penitentiary."
The judgment proper contains the following:
 "It is therefore considered and adjudged by the Court that the said defendant is guilty as charged in the indictment, and the said defendant being asked by the Court if he had anything to say why the sentence of the law should not now be pronounced upon him, says nothing in bar or preclusion of sentence. It is therefore considered and adjudged by the court and it is the judgment and sentence of the court that the said defendant be imprisoned in the penitentiary of the State of Alabama for a term of THIRTY YEARS."
Appellant is correct in asserting that a judgment sentencing a defendant convicted of a felony without giving the defendant an opportunity to say why sentence should not be pronounced against him is erroneous and that on an appeal from such a judgment the appellate court should remand the case to the trial court for proper sentencing. Thomas v. State, 280 Ala. 109, 190 So.2d 542 (1966); Gaines v. State, 52 Ala. App. 29,288 So.2d 810 (1973), cert. denied, 292 Ala. 720, 288 So.2d 813, cert. denied, 419 U.S. 851, 95 S.Ct. 92, 42 L.Ed.2d 82; Beatyv. State, 48 Ala. App. 699, 267 So.2d 490 (1972). However, the error of the court in first pronouncing the sentence was immediately erased by the court's inquiry of the defendant as to whether he had "anything to say prior to the imposition of sentence," the defendant's response to the question and the action thereafter pronouncing the sentence. Not only was defendant given an adequate opportunity to say anything he desired to say before sentence was finally pronounced, but also the transcript shows that there was a hearing about two weeks after he was sentenced to the penitentiary for thirty years, attended by defendant and his counsel, at which the sentence was reduced from thirty years to twelve years.
Another sentencing procedure would be supererogatory. The judgment of conviction and sentence should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.