TYSON, Judge.
The appellant was charged by two separate indictments with capital murder and robbery in the first degree, in violation of §§ 13A-5-40(a)(2) and 13A-8-41, Code of Alabama 1975. By agreement of the parties, the capital murder indictment was amended to charge the appellant with the lesser offense of murder, § 13A-6-2, Code of Alabama 1975, and the two indictments were then joined for trial. The jury thereafter found the appellant “guilty as charged in the indictment,” as amended, on both charges — murder and robbery in the first degree. The trial judge sentenced the appellant to 30 years’ and 10 years’ imprisonment, respectively, to be served consecutively, and ordered him to pay $25 to the Alabama Crime Victims Compensation Fund.
I
The appellant argues that his initial police interview was conducted without the benefit of the Miranda warnings. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Thus, he claims that the statement he gave at that time, along with a subsequent statement and all evidence collected as a result of his statements, should not have been admitted at trial. Furthermore, he contends that, without this evidence, the State lacked sufficient evidence to convict him of the charged crime.
On February 10, 1988, the day following the murder of Ed Pham, the police tracked down this appellant. The appellant lived with his grandfather in Muscoda, Alabama.
Sergeant James Earl Smith, with the Jefferson County sheriff’s department, was the first to come in contact with this appellant. Sergeant Smith knocked on the appellant’s grandfather’s door, and the appellant came to the door. Sergeant Smith introduced himself. Sergeant Smith told the appellant that he “needed to talk with him, and would he come out so we could talk in the car.” (R. 60.) Sergeant Smith testified that the appellant agreed to do so.
While the appellant and Sergeant Smith were sitting in the police car in front of the appellant’s grandfather’s house, Sergeant Wayne Lowe, with the sheriff’s department, arrived. According to Sergeant Lowe, Sergeant Smith stated that he had been asking the appellant where he had been on the previous evening. Sergeant Smith, during this interview, asked the appellant to go inside and get his tennis shoes. After the appellant returned, Sergeant Smith asked him “if he wouldn’t mind coming to the Sheriff’s Department with us.” (R. 185.) The appellant agreed to accompany Sergeants Smith and Lowe.
Sergeant Lowe testified that when Sergeant Smith asked the appellant to come to the sheriff’s department that he was considered a “suspect” at that time. According to Sergeant Lowe, the appellant was questioned further at the sheriff’s department. Based on these interviews, the appellant was placed under arrest. Cf. Taylor v. Alabama, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982).
As a result of the interviews on February 10, 1988, Sergeants Lowe and Smith returned to the appellant’s grandfather’s house. They obtained written consent from the appellant’s grandfather to search the premises. In the back yard, they found a smoldering fire. In the ashes, they discovered some metal straps, a chain, a lock, and a silver dollar. They believed those items were from an antique wooden trunk that had been taken from the victim’s home.
The appellant was then reinterviewed on February 12, 1988. The appellant was informed of his Miranda rights and he signed a waiver of rights form. The appellant made a statement in which he confessed to killing Ed Pham.
*1284 The gist of the appellant’s argument is that he was “in custody” when Sergeants Smith and Lowe questioned him on February 10, 1988. He claims that he was not advised of his Miranda rights. Thus, he argues that the statement was illegally obtained and that all evidence which was collected thereafter was tainted by the illegally obtained statement.
Initially, we note that the appellant’s confession on February 12, 1988, was given after he voluntarily, intelligently, and knowingly waived his Miranda rights. No improper promises, threats, or inducements were made to get the appellant to confess to the murder. See Hutchinson v. State, 516 So.2d 889, 894 (Ala.Cr.App.), cert. denied (Ala.1987).
The issue then is whether the statement on February 10, 1988, was improper and, if so, whether the statement on February 12, 1988, and the other evidence subsequently obtained was improperly admitted at trial.
It is well settled that evidence discovered as a result of an illegally obtained statement is inadmissible. Ex parte Callahan, 471 So.2d 463, 465-66 (Ala.1985), quoting Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 417-18, 9 L.Ed.2d 441 (1963). Likewise, a statement which is “the progeny of a previous illegally elicited confession” is a “fruit of the poisonous tree” and is inadmissible in evidence against an accused. Callahan, 471 So.2d at 464, 467.
This court addressed a similar fact situation in Harris v. State, 376 So.2d 773 (Ala.Cr.App.), cert. denied, 376 So.2d 778 (Ala. 1979). Following a rape and robbery, the police found a coat and cap in the prosecu-trix's apartment. Several informants told the police that the clothing belonged to the appellant Harris. Later, the police officers who were investigating the crime saw Harris walking down the street. They asked Harris if he could identify the coat and cap. Harris stated the coat was his, but that the cap was not. One of the officers then asked the appellant if he would go with them to police headquarters. The appellant agreed and went there “on his own free will.” After he and the officers had arrived at the police station and the officers had talked with him further and had compared his fingerprints with some prints taken at the crime scene, Harris was arrested and charged with the commission of the crime. No evidence was introduced that Harris was ever read his Miranda rights.
In Harris, we attempted to determine whether the appellant was “in custody” at the time he was confronted by the police and then asked to go to the police station:
“Miranda is limited to custodial interrogations only. Custodial interrogation is defined as ‘questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.’ Miranda, [384 U.S. at 444,] 86 S.Ct. at 1612. This is what was meant in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), by reference to an investigation which had ‘focused’ on the accused. Miranda, [384 U.S. at 444, fn. 4,] 86 S.Ct. at 1612, fn. 4.”
Harris, 376 So.2d at 774. See also Johnston v. State, 455 So.2d 152, 155-56 (Ala.Cr.App.), cert. denied (Ala.1984).
The standard of review to be applied in cases of this nature was set out in Finch v. State, 518 So.2d 864, 871 (Ala.Cr.App.1987), cert. denied (Ala.1988):
“The question of whether a suspect has been subjected to custodial interrogation requiring Miranda warnings is ‘not an easy one,’ and the trial court’s findings on conflicting evidence must be given great weight. Harris v. State, 376 So.2d 773, 776 (Ala.Cr.App.), cert. denied, 376 So.2d 778 (Ala.1979). ‘The trial judge’s finding of admissibility “will not be disturbed on appeal unless it is evident that the determination was palpably contrary to the weight of the evidence.” ’ Watkins v. State, 497 So.2d 1153, 1154 (Ala.Cr.App.1986) (quoting Ex parte Singleton, 465 So.2d 443, 445 (Ala.1985)). The determination of the admissibility of the defendant’s confession was within the sound discretion of the trial court, which was in the best position to deter *1285 mine the credibility of the voir dire witnesses by observing their testimony and demeanor. See Lindsey v. State, 456 So.2d 383, 389 (Ala.Cr.App.1983), aff'd, 456 So.2d 393 (Ala.1984), cert. denied, 470 U.S. 1023, 105 S.Ct. 1384, 84 L.Ed.2d 403 (1985). This determination will not be disturbed on appeal if supported by a preponderance of the evidence. Lindsey; 1 LaFave & Israel, [Criminal Procedure,] at section 10.4(b).”
Judging the facts and circumstances of the cause sub judice with these standards, we conclude that the appellant was not “in custody” at the time he was first interviewed on February 10, 1988. The police officers, in searching for this appellant, were looking for a “Tony” who had worked with Curtis Miles, an acquaintance of the victim. The appellant was the second person with whom the police had spoken about this case who worked with Curtis Miles and was known as “Tony.”
Sergeant Lowe admitted that, when he and Sergeant Smith questioned this appellant in front of his grandfather’s house, the appellant was a suspect in this case. This fact alone does not require that an accused be read his Miranda rights. Finch, 518 So.2d at 867, quoting California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983). See also Johnston, 455 So.2d at 156; Harris, 376 So.2d at 777, citing Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).
In this case, the appellant was questioned merely as part of a general “investigation.” Johnston, 455 So.2d at 156. The appellant, “on his own free will,” agreed to step outside the confines of his grandfather’s home and into the deputy sheriff’s automobile. Furthermore, he retrieved his tennis shoes on his own volition and agreed to accompany the two deputies to the sheriff’s department. We find no excessive coercion or pressure to get the appellant to comply. He was not arrested until after he arrived at the sheriff’s department and was questioned further. Under the facts of this case, it was not until this time that he was “in custody.”
As we previously stated, the February 12, 1988, statement was voluntarily, intelligently, and knowingly given, with proper Miranda warnings having been provided. Likewise, the tennis shoes were voluntarily given to the deputies by this appellant, and the parts from the antique trunk were found on the appellant’s grandfather’s premises- after the grandfather had signed a consent to search form. These items of evidence were, therefore, properly admitted at trial.
Moreover, the contents of the February 10, 1988, statement were not admitted into evidence. Small portions of that statement were used, however, to impeach the appellant during cross-examination. Cf. Hill v. State, 555 So.2d 341 (Ala.Cr.App.1989) (a statement obtained in violation of Miranda may be used for impeachment purposes). Use of this statement for this purpose was proper.
The admission of this evidence, along with the testimony of the victim’s common law wife, who witnessed the crime, overwhelmingly establishes the appellant’s guilt of both of the charged crimes.
Therefore, for the reasons stated, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.