Ralph K. Ellison and Vickey Ellison filed a complaint alleging fraudulent suppression, fraudulent misrepresentation, breach of contract, and negligence against Don Green, individually and d/b/a Omaha Farms (hereinafter "Green"). The Ellisons' claims arose from their purchase at auction of a horse owned by Green. In February 1999, Green made an offer of judgment of $2,500. The Ellisons did not respond to the offer of judgment, and the parties conducted discovery, including two out-of-state depositions.
The case proceeded to trial. The Ellisons dismissed the breach-of-contract and negligence claims at trial. The case was submitted to the jury on the fraud claims. The jury returned a verdict in favor of Green. Green filed a postjudgment motion seeking an award of costs and attorney fees. The trial court granted that motion. The Ellisons appeal.
All of the Ellisons' arguments on appeal relate to several of the legal decisions of the trial court. Because this appeal raises only issues of law, this court reviews the case de novo and affords no presumption of correctness to the trial court's decision regarding the application of the law to the facts.Crimson Indus., Inc. v. Kirkland, 736 So.2d 597 (Ala. 1999).
The record indicates that the Ellisons decided to start a business breeding "paint" horses. In October 1995, the Ellisons attended an auction in Mississippi at the "Jackson Fall Horse Market," which was conducted by Bid Masters, Inc. Ralph Ellison testified that the Ellisons went to the auction to purchase a stallion that was a "proven sire of color," meaning that the horse had sired a "painted" or "colored" foal. Jim Ware, the owner of Bid Masters, prepared an auction sales catalog that provided information regarding the horses to be sold at the auction.
Don Green placed approximately 80 horses for sale through the auction. The information in the auction sales catalog indicated that Code of Silence, one the horses Green placed for sale at the auction, was a "proven sire of color." The Ellisons purchased Code of Silence at the auction. The Ellisons later learned that Code of Silence was not a "proven sire of color" at the time of the auction.
Green provided the information for the auction sales catalog regarding each of his horses placed for sale at the auction. Green's notes, submitted to Ware, do not state that Code of Silence was a "proven sire of color." Green testified that he never told Ware that Code of Silence *Page 833 
was a proven sire of color and that he never read the auction sales catalog description of Code of Silence. Ware testified that Green never told him that Code of Silence was a proven sire of color, and Ware stated that he received information from the American Paint Horse Association indicating that Code of Silence was a proven sire of color.
On appeal, the Ellisons first argue that the trial court erred in refusing to admit evidence regarding alleged "similar acts" by Green. Before hearing testimony in this action, the trial court heard the arguments of counsel on several matters. One of those matters was a motion in limine, filed by Green, to exclude the testimony of three people who had, at the same auction, purchased horses owned by Green. The Ellisons argue that the trial court should have admitted, under Rule 401, Ala. R. Evid., the testimony of two women[1] who had purchased mares that were represented in the auction sales catalog as being pregnant at the time of the auction. Neither of those mares produced a foal. However, at least one of the women thought the mare she purchased had miscarried after the auction. Neither witness had any complaint against Green in connection with her purchase of the mare. On appeal, the Ellisons argue, as they alleged in the trial court, that Green misrepresented the condition of those mares, just as they say he misrepresented the condition of the horse the Ellisons purchased.
The Ellisons did not object, however, at trial to the trial court's granting of Green's motion in limine to exclude the testimony of those two witnesses. In order to preserve an issue for appellate review, a party must object at trial. An objection to a trial court's ruling on a motion in limine is required unless the trial court's ruling was absolute or unconditional. Perry v.Brakefield, 534 So.2d 602 (Ala. 1988). Where the trial court's ruling is not absolute or unconditional, in order to preserve the issue for appellate review the party disagreeing with the ruling must offer the testimony and obtain a ruling, in response to which, if it is adverse, he could make an offer of proof. Perryv. Brakefield, supra; Bolden v. Lang, 695 So.2d 54
(Ala.Civ.App. 1997). The Ellisons did not object when the court ruled on Green's motion in limine, and they did not offer the testimony of the two witnesses at trial. Thus, the Ellisons have not preserved this issue for appellate review.
The Ellisons next argue that the trial court erred in allowing Green to cross-examine Ralph Ellison on the issue of breach of contract after the Ellisons had dismissed that claim at trial. As a part of their argument, the Ellisons also argue that the trial court improperly instructed the jury regarding the elements of breach of contract during some portions of the testimony of the witnesses. In support of their argument, the Ellisons cite only general authority regarding jury instructions and regarding a trial judge's comments to the jury. Rule 28(a)(5), Ala.R.App.P., requires an appellant to support its argument on appeal by citations to appropriate authority. Further, in their brief on appeal, the Ellisons cite only those portions of the record demonstrating the parties' arguments before the trial court and its rulings. The Ellisons do not cite those portions of the record containing the questions asked by counsel for Green that they argue on appeal were improper. "It is not the function of this court to search a record on appeal to find evidence to support a party's argument." Brown v. Brown,719 So.2d 228 (Ala.Civ.App. 1998).
However, as to this issue we note that counsel for the Ellisons questioned Ware regarding the terms and conditions set forth in the auction sales catalog book. Counsel for the Ellisons also questioned Don Green regarding his understanding of the terms and conditions contained in the auction sales catalog. Counsel for the Ellisons argued at trial that he was attempting to establish that Green knew he was responsible for the information supplied in *Page 834 
the auction sales catalog and that his alleged failure to correct the allegedly incorrect information in the catalog constituted a reckless misrepresentation.
After the conclusion of Ware's testimony, the trial court stated for the record:
 "We had a trial conference off the record in chambers, and just to give the attorneys some guidance on some points, the principal question that was raised would be the ability of the defense counsel to inquire into the dismissal of the contract claim in this case. And, neither side [presented] any law [supporting its position]. . . . I think in view of the fact that the language in the contract carries certain implications . . . and the word `guarantee' appears in the contract of sale that existed between the parties, I think that it would be inappropriate for me not to allow defense counsel to go into that, so as to show the difference between a contract in which there is a guarantee, which would carry its own measure of damages which is not a part of this lawsuit, and a fraudulent misrepresentation."
In overruling the Ellisons' objection, the trial court stated:
 "[T]he problem is allowing [the cross-examination] would not be nearly as prejudicial as for me not to let him go into that with you having introduced, as a part of your case in chief, the contractual provisions . . . with the emphasis on the word `guaranteed.' . . . [A]n unsuspecting jury would have very great difficulty understanding the difference between fraud and a guarantee.
". . . .
 "It won't be much more prejudicial than the fact that you have already introduced your contract terms and tried to get the greatest benefit you could for your side out of it. For him not to be able to go back into it would be inappropriate. I will stop it once he has replied to you."
The trial court has broad discretion in ruling on the scope and extent of the cross-examination of witnesses, and its decision in that regard will not be reversed absent an abuse of that discretion. Williston v. Ard, 611 So.2d 274 (Ala. 1992). The trial court determined that Green was entitled to at least a limited amount of cross-examination to rebut the evidence presented by the Ellisons regarding the terms and conditions contained in the auction sales catalog. The Ellisons have not demonstrated that the trial court abused its discretion on this issue.
The Ellisons next argue that the trial court erred in failing to give one of their requested jury charges. The record on appeal does not contain any of the parties' requested jury charges. In order to preserve for appellate review the issue of the propriety of the trial court's refusal to grant a requested jury charge, the objecting party is required to present the trial court with a written requested jury charge. Bouler v. Pugh, 591 So.2d 868
(Ala.Civ.App. 1991). Because the Ellisons did not submit a written jury charge to the trial court, this issue was not preserved for appeal.
Last, the Ellisons argue that the trial court erred in granting Green's postjudgment motion. In that motion, Green sought, pursuant to both Rule 68, Ala.R.Civ.P., and the Alabama Litigation Accountability Act ("ALAA"), § 12-19-270 et seq., Ala. Code 1975, an award of costs, the expenses of the litigation, and attorney fees. During the hearing on Green's motion, the trial court stated that it did not find that the Ellisons' action was frivolous or "without substantial justification." See § 12-19-272, Ala. Code 1975. Therefore, Green was not entitled to recover damages pursuant to the ALAA. See § 12-19-272.
However, pursuant to Rule 68, the trial court awarded Green amounts for reimbursement of money he had expended for motel charges, airline tickets, and rental-car fees in connection with discovery conducted *Page 835 
after Green had made his offer of judgment. In addition, the trial court awarded Green $10,750 as reimbursement for the attorney fees he incurred as a result of this litigation.
In Alabama, however, a party may recover attorney fees "`only where authorized by statute, when provided in a contract or in an equitable proceeding where the efforts of an attorney create a fund out of which fees may be paid.'" Atkinson v. Long,559 So.2d 55, 58 (Ala.Civ.App. 1990) (quoting Shelby County Comm'n v.Smith, 372 So.2d 1092 (Ala. 1979)). None of those situations is applicable to the facts of this case. The trial court erred in awarding Green an amount as payment for his attorney fees. We reverse that portion of the trial court's judgment awarding Green $10,750 as an attorney fee.
In their brief on appeal, the Ellisons fail to support their arguments regarding the trial court's award to Green of amounts representing other post-offer-of-judgment costs with citations to any supporting authority. However, we note that this court has recently discussed the costs allowable under Rule 68, Ala.R.Civ.P.See Ennis v. Kittle, 770 So.2d 1090 (Ala.Civ.App. 1999). In that opinion, this court cited Lewis, Wilson, Lewis Jones, Ltd.v. First Nat'l Bank, 435 So.2d 20 (Ala. 1983), for the proposition that travel expenses are appropriate for reimbursement. Thus, we affirm that portion of the trial court's judgment awarding Green amounts representing reimbursement for amounts incurred in travel related to the discovery conducted after Green had made his offer of judgment.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ROBERTSON, P.J., and YATES, MONROE, and CRAWLEY, JJ., concur.
[1] The Ellisons make no argument regarding the third witness.