[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1062 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1063 
Richard L. Hodges was convicted of murder made capital because it was committed during the course of a robbery, a *Page 1064 
violation of § 13A-5-40(a)(2), Ala. Code 1975, and of robbery in the first degree, a violation of § 13A-8-41, Ala. Code 1975. He was sentenced to life imprisonment without the possibility of parole for the capital-murder conviction and to 25 years' imprisonment for the robbery conviction; the sentences were to run concurrently.
The evidence adduced at trial indicated the following. Between 10:00 a.m. and 11:00 a.m. on the morning of September 1, 2000, Hodges and his codefendant, Kendrick Thomas, were at Hodges's residence in Nicholsville. Thomas had a pistol with him, and the two discussed committing a robbery. Hodges stated that he knew someone they could rob. Hodges then took Thomas's pistol and walked across the street to the home of his neighbor, 67-year-old Edward Phillips. Thomas followed. Hodges was apparently angry with Phillips for allegedly making derogatory comments about his mother. Hodges knocked on Phillips's front door and, after a brief conversation, shot Phillips three times. Thomas then took Phillips's wallet from his pants pocket and the two returned to Hodges's residence, where they split $200 in cash they found in the wallet. Thomas then threw the pistol and the wallet into the woods behind Hodges's residence.
Phillips's body was discovered by his son late in the afternoon on September 1, 2000, and the Marengo County Sheriff's Department as well as the Alabama Bureau of Investigation ("ABI") were notified and began investigating. ABI Agent Johnny Tubbs was one of the officers at the scene. During his investigation at the scene, Agent Tubbs learned that Hodges lived across the street from Phillips, and he told Hodges that he wanted to speak with him. According to Agent Tubbs, Hodges stated that he did not want to stay in the area near the dead body, but that he would speak with Agent Tubbs at another location. Agent Tubbs and Hodges then agreed to meet at the Marengo County Sheriff's Department later that night. A Marengo County sheriff's deputy transported Hodges to the sheriff's department later that evening, but Agent Tubbs was still at the scene investigating and was unable to speak with Hodges.[1] Hodges was then taken home by another deputy, but was asked to return to the sheriff's department the following day. The following afternoon, on September 2, 2000, Hodges returned to the sheriff's department and spoke with Agent Tubbs, at which time Hodges confessed to the crime. Following Hodges's confession, law-enforcement officials arrested Thomas, who also gave a full confession.[2] After his confession, Thomas took law-enforcement officials to the woods behind Hodges's residence and showed them where he had disposed of the wallet and the pistol.
 I.
Hodges contends that the record on appeal is incomplete and that, therefore, he is entitled to a new trial. He argues that the record does not contain a transcript of the preliminary hearing conducted on February 9, 2001, and does not contain a discussion between his attorney and the trial court that occurred during the trial regarding the failure of two of Hodges's witnesses, Dr. Catherine Boyer and Inez McDaniel, to appear for trial. According to Hodges, absent a transcript of these proceedings, this Court cannot adequately review his claims on appeal. *Page 1065 
After the record was submitted on appeal, Hodges filed a motion to supplement the record with the transcripts of hearings he said had been conducted on February 9, 2001, August 8, 2002, October 3, 2003, October 16, 2003, January 27, 2004, and February 13, 2004. The trial court denied the motion, stating that the court reporter had stated that she had nothing with which to supplement the record. Hodges then filed a motion requesting that this Court order the record to be supplemented with the transcripts of the above-listed hearings; this Court denied the motion.
Initially, we note that although Hodges makes a general reference in his brief to the fact that the record does not contain "all of the proceedings held by the trial court" (Hodges's brief at p. 21), he makes an argument about only the February 9, 2001, preliminary hearing and the discussion between his attorney and the trial court regarding two of his witnesses. Hodges mentions in his brief that proceedings conducted on October 3, 2003, and June 7, 2004,[3] are not included in the record; however, he does so only in passing. He makes no argument with respect to these proceedings. Hodges does not even mention in his brief the proceedings conducted on August 8, 2002, October 16, 2003, January 27, 2004, and February 13, 2004,[4] which were included in his motion to supplement the record. Therefore, to the extent that Hodges intended to argue on appeal that the alleged absence from the record of the proceedings conducted on August 8, 2002, October 3, 2003, October 16, 2003, January 27, 2004, February 13, 2004, and June 7, 2004, entitles him to a new trial, he has failed to comply with Rule 28(a)(10), Ala.R.App.P., and any argument in that regard is deemed to be waived.
With respect to the proceedings about which Hodges does make an argument, i.e., the February 9, 2001, preliminary hearing and the discussion between his attorney and the trial court regarding two of his witnesses, he has failed to show that he was prejudiced by the omission of these proceedings from the record.
 "Where the transcript or record is incomplete, two rules have evolved. The first applies to the situation where the appellant is represented on appeal by the same counsel that represented him at trial. In that case, the failure to supply a complete record is not error per se and will not work a reversal absent a specific showing of prejudice. In other words, in such a case, the appellant must show that failure to record and preserve the specific portion of the trial proceedings complained of visits a hardship upon him and prejudices his appeal. The second applies to the situation where the appellant is represented by new counsel on appeal. When he is represented on appeal by counsel other than the attorney at trial, the absence of a substantial and significant portion of the record, even absent any showing of specific prejudice or error, is sufficient to warrant reversal. Ex parte Godbolt, [546 So.2d 991 (Ala. 1987),] adopting the rule established in United States v. Selva, 559 F.2d 1303 (5th Cir. 1977). `We do not advocate a mechanistic approach *Page 1066 
to situations involving the absence of a complete transcript of the trial proceedings. We must, however, be able to conclude affirmatively that no substantial rights of the appellant have been adversely affected by the omissions from the transcript.' Ex parte Godbolt, 546 So.2d at 997, quoting with approval, United States v. Selva, 559 F.2d at 1305-06."
Ingram v. State, 779 So.2d 1225, 1280-81 (Ala.Crim.App. 1999), aff'd, 779 So.2d 1283 (Ala. 2000). Here, Hodges is represented on appeal by the same counsel who represented him at trial. Therefore, Hodges must make a specific showing of prejudice resulting from the failure to record and preserve the proceedings he claims should have been included the record on appeal.
With respect to the preliminary hearing conducted on February 9, 2001,[5] Hodges has failed to make a specific showing of prejudice. He makes only a broad and general allegation that that hearing included testimony "that bears on whether Hodges'[s] confession was voluntary." (Hodges's brief at p. 21.) However, he does not allege what testimony was presented at the preliminary hearing that was relevant to the issue whether his confession was voluntary. Therefore, Hodges has failed to satisfy his burden of showing that the absence from the record of the transcript of the preliminary hearing conducted on February 9, 2001, prejudiced him.
With respect to the alleged discussion between Hodges's attorney and the trial court regarding the absence of Dr. Boyer and Inez McDaniel, Hodges has again failed to make a specific showing of prejudice. He makes a broad and general allegation that the discussion is "mandatory for the efficacy of Hodges's appeal" (Hodges's brief at p. 21), specifically, as to his argument that the absence of Dr. Boyer and McDaniel denied him a fair trial.[6] He also makes a general allegation that the discussion with the trial court included his attorney's informing the trial court that Dr. Boyer was "on call" and that his attorney had attempted to contact Dr. Boyer by telephone with no success, and his attorney's telling the trial court that he was leaving his cellular telephone on during the trial so that Dr. Boyer could return his call; however, Hodges fails to set forth in his brief any specific details regarding the discussion between his attorney and the trial court that could have aided him in his argument regarding the absence of Dr. Boyer and McDaniel.[7] Therefore, Hodges failed to satisfy his burden of showing that the absence from the record of a transcript of the discussion regarding two of his witnesses prejudiced him.
In addition, we note that Hodges never moved to supplement the record with this discussion. As noted above, Hodges's motions to supplement filed in the trial court and in this Court included various pretrial hearings; however, he did not mention in his motions the alleged discussions during trial regarding Dr. Boyer and McDaniel. *Page 1067 
"It is the appellant's duty to point out deficiencies in the record within the time allowed by the Rules of Appellate Procedure. Rule 10(g), Ala.R.App.P." McGriff v. State,908 So.2d 961, 992 (Ala.Crim.App. 2000), rev'd on other grounds,908 So.2d 1024 (Ala. 2004). Because Hodges never moved to supplement the record with the alleged discussions regarding Dr. Boyer and McDaniel, he cannot now complain that the record is incomplete in this regard.
Because Hodges has failed to show that he has been prejudiced by the omission from the record of the transcripts of the preliminary hearing conducted on February 9, 2001, and the discussion between his counsel and the trial court regarding two of his witnesses, he is not entitled to a new trial on the ground that the record on appeal is incomplete.
 II.
Hodges contends that the trial court erred in determining that he was competent to stand trial. He maintains that because he was not taking his psychotropic medication during the trial, he was not competent, and that the testimony he gave at trial showed that he was not competent.[8]
The record reflects that Hodges was indicted in November 2000. In January 2001, Hodges requested a psychiatric evaluation to determine his competency to stand trial and his mental state at the time of the offense, and he requested funds to hire his own psychiatric expert. The trial court granted both motions. Hodges was evaluated at Taylor Hardin Secure Medical Facility in October 2001; he was determined to be mildly mentally retarded and unable to understand the legal proceedings against him. In February 2003, the trial court found Hodges incompetent to stand trial and committed him to Taylor Hardin. In May 2003, after treatment at Taylor Hardin, Hodges was evaluated a second time. During this second evaluation, Hodges reported auditory and visual hallucinations, and his memory appeared to be impaired. However, testing indicated that Hodges was malingering, i.e., exaggerating and/or feigning symptoms, with respect to both his reported hallucinations and his memory impairment. Hodges was found to understand the charges against him and the possible penalties, to have "a good understanding of the roles of various courtroom personnel including the defense attorney, prosecuting attorney, judge, jury, and witnesses" (C. 203), and to be able to reason and testify relevantly on his own behalf. However, because of his intellectual deficits, the examiner, Dr. Brent Willis, noted that "Hodges would have a somewhat more difficult time during cross-examination" if he testified on his own behalf (C. 204), and recommended that "those [who] communicate with him should use easily understandable language and concrete examples when explaining information to him . . . [and] should also have him repeat information back in his own words in order to ensure comprehension." (C. 205.)
In October 2003, the trial court set the trial for February 24, 2004. In December 2003, Hodges again requested a psychiatric *Page 1068 
evaluation to determine his competency to stand trial. In January 2004, the trial court ordered Hodges to be evaluated to determine his competency to stand trial and his competency to waive hisMiranda[9] rights.[10] Hodges was evaluated at Taylor Hardin a third time in February 2004, again by Dr. Willis. At that time, Hodges was no longer taking the medication that had been prescribed to him when he was released from Taylor Hardin in May 2003. At trial, Hodges testified that his medication had been discontinued in August 2003. During the February 2004 evaluation, Hodges denied experiencing any auditory or visual hallucinations. Hodges was found to understand the charges against him and possible penalties, as well as the role of his defense attorney, the prosecuting attorney, and witnesses, but he professed not to know the role of the judge or the jury. Dr. Willis stated in his report, however, that Hodges "did not put forth maximum effort while answering questions related to competency" and that he believed that despite Hodges's claims to the contrary, Hodges had "the capacity to assume the role of defendant" and had "an adequate understanding of all areas related to competency." (C. 314.)
In March 2002 and October 2003, Hodges was also evaluated by his own psychiatric expert, Dr. Catherine Boyer, to determine his competency to stand trial, his competency to waive his Miranda
rights, and his mental state at the time of the offense. In her report,[11] which was submitted to the court in January 2004, Dr. Boyer stated that Hodges was mildly mentally retarded and that he suffered from chronic depression "fueled by post-traumatic stress symptoms stemming from the death of his brother" when he was a child. (C. 259.) Dr. Boyer found that Hodges was competent to stand trial; she stated that Hodges understood the charges against him and the possible penalties and the role of various participants in the criminal process and that "[h]e was able to communicate about his case in a coherent manner." (C. 261.) However, Dr. Boyer stated that she had learned since the last time she had interviewed Hodges that the medication prescribed to him while he was at Taylor Hardin had been discontinued, and that his competency may have changed because of the discontinuation of the medication. The last time Dr. Boyer interviewed Hodges before submitting her report was in October 2003; however, as noted above, Hodges testified at trial that his medication had been discontinued in August 2003, over two months before Dr. Boyer interviewed him in October 2003 and found him to be competent.
At a pretrial hearing on February 13, 2004, the trial court found, based on the reports by Dr. Willis and Dr. Boyer, that there was no reasonable or bona fide doubt as to Hodges's competency to stand trial.
"A defendant is mentally incompetent to stand trial or to be sentenced for an offense if that defendant lacks sufficient present ability to assist in his or her defense by consulting with counsel with a reasonable degree of rational understanding of the facts and the legal proceedings against the defendant." Rule 11.1, Ala. R.Crim.P. "The defendant bears the burden of persuading the court that a reasonable and bona fide doubt exists as to the defendant's mental competency, and this is a matter within the discretion of the trial court." Cliff v. State,518 So.2d 786, 790 *Page 1069 
(Ala.Crim.App. 1987). "In order to overturn the trial judge's competency determination, we must find that the judge abused his or her discretion." Tankersley v. State, 724 So.2d 557, 565
(Ala.Crim.App. 1998). "`In the absence of any evidence, the mere allegations by counsel that the defendant is incompetent to stand trial do not establish reasonable grounds to doubt the defendant's sanity and warrant an inquiry into his competency.'"Id., quoting Cliff, 518 So.2d at 791.
 "`[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.' [Card v. Singletary, 981 F.2d 481] at 487-88 [(11th Cir. 1992)] (quoting United States ex rel. Foster v. DeRobertis, 741 F.2d 1007, 1012 (7th Cir.), cert. denied, 469 U.S. 1193, 105 S.Ct. 972, 83 L.Ed.2d 975
(1985)). Similarly, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial. McCune v. Estelle, 534 F.2d 611, 612
(5th Cir. 1976). The fact that a defendant has been treated with anti-psychotic drugs does not per se
render him incompetent to stand trial. Fallada [v. Dugger], 819 F.2d [1564] at 1569 [(11th Cir. 1987)]."
Medina v. Singletary, 59 F.3d 1095, 1107 (11th Cir. 1995).
Nothing in the record indicates the existence of a reasonable or bona fide doubt as to Hodges's competency to stand trial. Dr. Willis and Dr. Boyer both stated that Hodges understood the charges against him and the possible penalties, as well as the various participants in the criminal process, and they both were of the opinion that Hodges was competent to stand trial. Although Hodges was diagnosed as mildly mentally retarded, low intelligence is not the equivalent of incompetency. Likewise, the fact that Hodges had previously been on medication does not make him incompetent to stand trial, especially in light of the evaluations of Dr. Willis and Dr. Boyer, both of which were conducted after, according to Hodges's own testimony, his medication had been discontinued. Moreover, although Hodges alleges on appeal that his testimony during trial suggests that he was incompetent, we have reviewed Hodges's testimony and can find nothing suggesting that Hodges was incompetent.
We find no abuse of discretion on the part of the trial court in concluding that Hodges was competent to stand trial.
 III.
Hodges contends that the trial court erred in denying his motion to suppress the confession he made to Agent Tubbs on September 2, 2000, because, he says, the confession was the product of a custodial interrogation and he had not been advised of his Miranda rights. He also argues that the circumstances surrounding his confession as well as his low intelligence rendered involuntary his subsequent waiver of his Miranda
rights.
As noted above, Agent Tubbs first spoke with Hodges at the scene on the night of September 1, 2000. During that initial conversation, Agent Tubbs informed Hodges that he wanted to speak with him; Hodges stated that he did not want to remain at the scene; and Agent Tubbs and Hodges then agreed to meet later that evening at the Marengo County Sheriff's Department. A Marengo County sheriff's deputy transported Hodges to the sheriff's department later that evening, but because Agent Tubbs was not present, Hodges was taken home and asked to return the next *Page 1070 
day.[12] The following afternoon, Hodges returned to the sheriff's department on his own, and Agent Tubbs interviewed him. Agent Tubbs testified that he wanted to interview Hodges because Hodges lived in the area and might have had information regarding the victim; that Hodges was not a suspect in the crime when he initially spoke with Hodges at the scene on the night of September 1, 2000, or when the interview began on the afternoon of September 2, 2000; and that because Hodges was not a suspect in the crime, he did not advise Hodges of his Miranda rights the night of September 1, 2000, or at the beginning of the interview on September 2, 2000.
Agent Tubbs testified that, during the interview on September 2, 2000, he asked Hodges about the victim and what kind of person the victim was. According to Agent Tubbs, Hodges told him that the victim was a "nasty" person, that he was "prejudiced," that he was a "racist," and that he had spoken "bad" about Hodges's mother. (C. 281.) Agent Tubbs said that Hodges then began crying and stated, "That's why I killed him." (C. 281.) In contrast to Agent Tubbs's testimony, Hodges testified at trial[13] that when he was interviewed by Agent Tubbs on September 2, 2000, Agent Tubbs stated that the victim was a "nasty guy," that he knew Hodges had committed the murder, and that Hodges should confess. Hodges stated that, at that point, he confessed.
Immediately after Hodges's initial confession, Agent Tubbs said, he ceased questioning Hodges and advised Hodges of hisMiranda rights; Hodges then signed a waiver-of-rights form and gave a full confession detailing the crime. Agent Tubbs testified that Hodges indicated that he understood his rights; that Hodges was coherent and did not appear to be "mentally slow" (C. 303), but appeared to understand what was being said throughout the interview; that he did not threaten Hodges; and that he did not make any promises to Hodges.
 "In Hooks v. State, 534 So.2d 329 (Ala.Cr.App. 1987), aff'd, 534 So.2d 371 (Ala. 1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989), this Court stated:
 "`Miranda warnings are not necessarily required to be given to everyone whom the police question. Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 713, 50 L.Ed.2d 714 (1977). Miranda is only applicable when an individual is subjected to custodial interrogation. Davis v. Allsbrooks, 778 F.2d 168, 170 (4th Cir. 1985); Primm v. State, 473 So.2d 1149, 1158 (Ala.Crim.App.), cert. denied, 473 So.2d 1149 (Ala. 1985). "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in a significant way." Miranda, supra, 384 U.S. at 444, 86 S.Ct. at 1612. *Page 1071 
 "`There is a distinction which must be made between general interrogation and custodial interrogation since Miranda is inapplicable when interrogation is merely investigative rather than accusative. Kelley v. State, 366 So.2d 1145, 1148 (Ala.Crim.App. 1979); Primm, supra, at 1158; Johnston v. State, 455 So.2d 152, 156 (Ala.Crim.App.), cert. denied, 455 So.2d 152 (Ala. 1984). This distinction should be made on a case-by-case basis after examining all of the surrounding circumstances. United States v. Miller, 587 F.Supp. 1296, 1299 (W.D.Pa. 1984); Johnston, supra, at 156; Warrick v. State, 460 So.2d 320, 323 (Ala.Crim.App. 1984); Hall v. State, 399 So.2d 348, 351-52 (Ala.Crim.App. 1981); Kelley, supra at 1149.'
 "534 So.2d at 347-48 (Ala.Cr.App. 1987). See State v. Smith, 715 So.2d 925 (Ala.Cr.App. 1998).
 "In deciding whether the questioning of a suspect is a custodial interrogation, the following factors should be considered:
 "`"(1) the language used to summon the individual, (2) the extent to which the defendant is confronted with evidence of guilt, (3) the physical surroundings of the interrogation, (4) the duration of the detention, and (5) the degree of pressure applied to detain the individual. United States v. Crisco, 725 F.2d 1228, 1231 (9th Cir.), cert. denied, 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 832 (1984)."'
 "Hooks v. State, 534 So.2d at 348 (some citations omitted), quoting United States v. Wauneka, 770 F.2d 1434, 1438 (9th Cir. 1985). See also State v. Smith, 715 So.2d at 927.
 "In Click v. State, 695 So.2d 209 (Ala.Cr.App. 1996), cert. denied, 522 U.S. 1001, 118 S.Ct. 570, 139 L.Ed.2d 410 (1997), this Court stated:
 "`It is well established that "the prosecution may not use statements, whether exculpatory or inculpatory, of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). However, the safeguards required by Miranda are required only if the defendant is in custody when questioned. Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984); Landreth v. State, 600 So.2d 440, 444 (Ala.Cr.App. 1992).
"`. . . .
 "` . . . [T]he fact that the questioning occurred at the police station does not necessarily lead to a conclusion that appellant was in custody for Miranda purposes.
 "`"[P]olice officers are not required to administer Miranda warnings to everyone they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect."
 "`Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977).'
"695 So.2d at 216-17."
Broadnax v. State, 825 So.2d 134, 165-66 (Ala.Crim.App. 2000), aff'd, 825 So.2d 233 (Ala. 2001). "The absence of Miranda
warnings does not forbid the introduction in evidence of statements by a defendant that are not the product of custodial interrogation." Seagroves v. State, 726 So.2d 738, 742
(Ala.Crim.App. 1998). "An unsolicited remark, not in response to any interrogation, does not fall within the scope *Page 1072 
of the Miranda rule." Ray v. State, 809 So.2d 875, 888
(Ala.Crim.App. 2001).
 "The question of whether a suspect has been subjected to custodial interrogation requiring Miranda
warnings is `not an easy one,' and the trial court's findings on conflicting evidence must be given great weight. Harris v. State, 376 So.2d 773, 776
(Ala.Cr.App.), cert. denied, 376 So.2d 778 (Ala. 1979). `The trial judge's finding of admissibility "will not be disturbed on appeal unless it is evident that the determination was palpably contrary to the weight of the evidence."' Watkins v. State, 497 So.2d 1153, 1154 (Ala.Cr.App. 1986) (quoting Ex parte Singleton, 465 So.2d 443, 445 (Ala. 1985)). The determination of the admissibility of the defendant's confession was within the sound discretion of the trial court, which was in the best position to determine the credibility of the voir dire witnesses by observing their testimony and demeanor. See Lindsey v. State, 456 So.2d 383, 389
(Ala.Cr.App. 1983), aff'd, 456 So.2d 393 (Ala. 1984), cert. denied, 470 U.S. 1023, 105 S.Ct. 1384, 84 L.Ed.2d 403 (1985). This determination will not be disturbed on appeal if supported by a preponderance of the evidence. Lindsey; 1 LaFave Israel, [Criminal Procedure], at § 10.4(b) [(1984)]."
Finch v. State, 518 So.2d 864, 871 (Ala.Crim.App. 1987). See also Smolder v. State, 671 So.2d 757 (Ala.Crim.App. 1995).
 "`[A] trial court's ruling based upon conflicting evidence given at a suppression hearing is binding on this Court, and is not to be reversed absent a clear abuse of discretion.' Jackson v. State, 589 So.2d 781, 784 (Ala.Cr.App. 1991) (citations omitted). `"A judge abuses his discretion only when his decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based his decision."' Dowdy v. Gilbert Engineering Co., 372 So.2d 11, 12 (Ala. 1979) (quoting Premium Service Corp. v. Sperry Hutchinson, Co., 511 F.2d 225 (9th Cir. 1975))."
State v. Jude, 686 So.2d 528, 530 (Ala.Crim.App. 1996).
Hodges came to the sheriff's department voluntarily on September 2, 2000. He was not under arrest; he was never told that he was not free to leave; and nothing in the record indicates that he was not free to leave or that he was in custody when the interview began. Agent Tubbs testified that he was interviewing Hodges because Hodges lived in the area where the crime occurred and he thought Hodges might have information about the victim; at that time, Agent Tubbs believed that Hodges was a possible witness to the crime, not a suspect in the crime. Although Hodges testified that he confessed only after Agent Tubbs accused him of committing the murder, Agent Tubbs testified that he never accused Hodges of committing the murder, but merely asked Hodges what kind of person the victim was, at which point, Hodges spontaneously confessed. Resolving all credibility choices in favor of the trial court's ruling, we conclude that Hodges's initial confession was not the product of custodial interrogation and, thus, that he was not entitled to Miranda warnings at that time.
It was only after Hodges initially confessed that the interview became a custodial interrogation. At that point, however, Agent Tubbs advised Hodges of his Miranda rights and Hodges signed a waiver-of-rights form before making a full confession detailing the crime.
 "Whether a waiver of Miranda rights is voluntarily, knowingly, and intelligently made depends on the facts of each case, considering the totality of *Page 1073 
the circumstances surrounding the interrogation, including the characteristics of the accused, the conditions of the interrogation, and the conduct of the law-enforcement officials conducting the interrogation. Moran v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); Houston v. State, 798 So.2d [704,] 706 [(Ala.Crim.App. 2000)]; Click v. State, 695 So.2d 209 (Ala.Crim.App. 1996). The trial court's finding that a statement was voluntary need be supported only by a preponderance of the evidence; it is given great deference on appeal and will not be overturned unless it is palpably contrary to the weight of the evidence or is manifestly wrong. See Taylor v. State, 808 So.2d 1148 (Ala.Crim.App.), aff'd, 808 So.2d 1215 (Ala. 2001); Dixon v. State, 588 So.2d 903 (Ala. 1991); Marlowe v. State, 854 So.2d 1182 (Ala.Crim.App. 2002); Magwood v. State, 494 So.2d 124
(Ala.Crim.App. 1985), aff'd, 494 So.2d 154 (Ala. 1986)."
Foldi v. State, 861 So.2d 414, 421-22 (Ala.Crim.App. 2002).
 "Having a low IQ will not render a waiver ineffective unless the individual's IQ is so low that the person attempting to waive his rights absolutely cannot understand his Miranda rights. Arnold v. State, 448 So.2d 489 (Ala.Crim.App. 1984).
 "`We have often held that "the fact that a defendant may suffer from a mental impairment or low intelligence will not, without other evidence, render a confession involuntary." See Colorado v. Connelly, 479 U.S. 157, 163-65, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986); Baker v. State, 599 So.2d 60, 63 (Ala.Cr.App. 1991), State v. Austin, [596 So.2d 598 (Ala.Cr.App. 1991)] supra, Holladay v. State, 549 So.2d 122 (Ala.Cr.App. 1988), aff'd, 549 So.2d 135 (Ala. 1989), cert. denied, 493 U.S. 1012, 110 S.Ct. 575, 107 L.Ed.2d 569 (1989).'
 "Youngblood v. State, 656 So.2d 385, 387
(Ala.Cr.App. 1993).
 "`[A] defendant's mental impairment, even if it exists, is merely one factor affecting the validity of his waiver of rights and the voluntariness of his confession. See generally Annot., 8 A.L.R.4th 16 (1981). "While an accused's intelligence and literacy are important factors to be considered in determining whether he intelligently and voluntarily waived his constitutional rights and made a confession, weak intellect or illiteracy alone will not render a confession inadmissible." Hobbs v. State, 401 So.2d 276, 282 (Ala.Cr.App. 1981).'
 "Whittle v. State, 518 So.2d 793, 796-97
(Ala.Cr.App. 1987)."
Dobyne v. State, 672 So.2d 1319, 1337 (Ala.Crim.App. 1994), aff'd, 672 So.2d 1354 (Ala. 1995).
Although Hodges was diagnosed as mildly mentally retarded, both Dr. Willis and Dr. Boyer, who evaluated Hodges to determine his competency to waive his Miranda rights, were of the opinion that Hodges's mental retardation was not so extreme as to render him incapable of understanding his rights and voluntarily waiving them. Moreover, nothing in the circumstances surrounding Hodges's confession indicates that Hodges did not understand his rights or voluntarily waive them. Resolving all credibility choices in favor of the trial court's ruling, the evidence indicated that Hodges's encounter with Agent Tubbs was initially consensual, with Hodges voluntarily coming to the sheriff's department for an interview. After Hodges spontaneously confessed to the murder, Agent Tubbs advised Hodges of his Miranda rights and Hodges signed a *Page 1074 
waiver-of-rights form. Agent Tubbs testified that he did not threaten Hodges or promise Hodges anything; that Hodges indicated that he understood each of his rights; and that Hodges did not appear to be mentally slow. Based on this evidence, we conclude that Hodges voluntarily waived his Miranda rights.
The trial court did not abuse its discretion in denying Hodges's motion to suppress his confession.
 IV.
Hodges contends that the trial court erred in not suppressing "[a]ll of the State's evidence, including Kendrick Thomas'[s] confession, the recovery of Phillips'[s] wallet, and the recovery of Thomas'[s] gun" which, he says, were the fruit of his involuntary confession. (Hodges's brief at pp. 23-24.)
Hodges's argument in this regard does not comply with Rule 28(a)(10), Ala.R.App.P., which requires that an argument contain "the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on." Hodges provides no citations to the parts of the record relied on in support of this claim; he does not cite to the portions of the record where Thomas's confession, Phillips's wallet, or Thomas's gun were introduced into evidence or to any objection or motion he made with respect to these items of evidence. See, e.g., Hartv. State, 852 So.2d 839, 848 (Ala.Crim.App. 2002) ("By failing to include any citations to the record on this issue, Hart has failed to comply with Rule 28(a)(10), Ala.R.App.P., and has waived this claim for purposes of appellate review."). In addition, Hodges cites to only a single case for the general proposition that "[a]ll evidence that derives from the poisonous tree (Hodges'[s] confession) must be excluded." (Hodges's brief at p. 24.) "Authority supporting only `general propositions of law' does not constitute a sufficient argument for reversal."Beachcroft Props., LLP v. City of Alabaster, 901 So.2d 703, 708
(Ala. 2004), quoting Geisenhoff v. Geisenhoff, 693 So.2d 489,491 (Ala.Civ.App. 1997). "It is not the job of the appellate courts to do a party's legal research. Nor is it the function of the appellate courts to `make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.'" Pileri Indus., Inc. v.Consolidated Indus., Inc., 740 So.2d 1108, 1110 (Ala.Civ.App. 1999) (citations omitted). See also Ellison v. Green,775 So.2d 831 (Ala.Civ.App. 2000) (citations to only general propositions of law not sufficient to satisfy Rule 28(a)(10), Ala.R.App.P.). Because Hodges's argument fails to comply with Rule 28(a)(10), this issue is deemed to be waived.
Moreover, even if this issue was not waived, because we have already determined that Hodges's confession was voluntary and properly admitted into evidence, see Part III of this opinion, all of the evidence flowing from that confession was likewise properly admitted into evidence.
 V.
In his final two issues, Hodges contends (1) that the prosecutor's cross-examination of him regarding Dr. Boyer's written report "was violative of the hearsay rule and . . . denied [him] due process and equal protection" (Hodges's brief at p. 25); and (2) that he was denied due process, equal protection, and a fair trial when two witnesses he had subpoenaed, Dr. Boyer and Inez McDaniel, failed to appear for trial.
Hodges's arguments do not comply with Rule 28(a)(10), Ala.R.App.P. In each of his *Page 1075 
claims, Hodges cites only a single case;[14] however, he engages in no discussion whatsoever as to how those cases are relevant to the particular issues raised or supportive of his contentions. Merely citing a case with no discussion as to its relevance is insufficient to satisfy Rule 28(a)(10). SeeSpradlin v. Spradlin, 601 So.2d 76, 78-79 (Ala. 1992) (holding that citation to a single case with no argument as to how that case supports the appellant's contention on appeal was insufficient to satisfy Rule 28(a)(5), Ala.R.App.P., now Rule 28(a)(10), Ala.R.App.P.). See also Water Works Sewer Bd. ofSelma v. Randolph, 833 So.2d 604, 605 (Ala. 2002) (opinion on application for rehearing) ("Merely quoting a statute and emphasizing certain parts with bold type does not constitute a properly stated and supported contention.").
 "We have stated that it is not the function of this court to do a party's legal research. See Henderson[v. Alabama A M University], 483 So.2d [392,] 392 [(Ala. 1986)]. Similarly, we cannot create legal arguments for a party based on undelineated general propositions unsupported by authority or argument. Ala.R.App.P. 28(a)(5) [now Rule 28(a)(10), Ala.R.App.P.]; Brittain v. Ingram, 282 Ala. 158, 209 So.2d 653 (1968) (analyzing the predecessor to Ala. R.App.P. 28); Ex parte Riley, 464 So.2d 92
(Ala. 1985)."
Spradlin, 601 So.2d at 78-79.
Because Hodges has failed to comply with Rule 28(a)(10), his final two issues are deemed to be waived.
 VI.
Although Hodges does not so argue on appeal, the State correctly points out in its brief to this Court that the robbery underlying Hodges's capital-murder conviction is the same robbery underlying Hodges's robbery conviction; thus, Hodges's convictions for both capital murder and the lesser-included offense of robbery in the first degree violate the principles of double jeopardy. As this Court explained in Buford v. State,891 So.2d 423 (Ala.Crim.App. 2004):
 "It is well settled that `[a] defendant cannot be convicted of both a capital offense and a lesser offense that is included in the capital charge.' Adams v. State, [Ms. CR-98-0496, August 29, 2003] ___ So.2d ___, ___ (Ala.Crim.App. 2003). See also Turner v. State, 924 So.2d 737 (Ala.Crim.App. 2002). Section 13A-1-8(b), Ala. Code 1975, provides, in pertinent part:
 "`(b) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
 "`(1) One offense is included in the other, as defined in Section 13A-1-9.'
 "Such a double-jeopardy transgression implicates the jurisdiction of the trial court and must be noticed by this Court regardless of whether it was raised. See, e.g., Straughn v. State, 876 So.2d 492
(Ala.Crim.App. 2003) (opinion on return to remand and on application for rehearing); Borden v. State, *Page 1076 
 711 So.2d 498 (Ala.Crim.App. 1997), aff'd, 711 So.2d 506 (Ala. 1998); and Rolling v. State, 673 So.2d 812
(Ala.Crim.App. 1995)."
891 So.2d at 435-36.
Based on the foregoing, we affirm Hodges's conviction and sentence for capital murder. However, we reverse Hodges's conviction and sentence for first-degree robbery and remand this case for the trial court to vacate Hodges's conviction and sentence for that offense. Due return shall be filed with this Court within 28 days of the date of this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.*
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.
[1] See Part III of this opinion.
[2] In exchange for his testimony against Hodges, Thomas pleaded guilty to robbery in the first degree for his involvement in the crime.
[3] The record indicates that the June 7, 2004, hearing referenced by Hodges in his brief was the sentencing hearing for Hodges's robbery conviction. However, because we must reverse Hodges's robbery conviction, see Part VI of this opinion, any argument regarding the absence from the record of the transcript of the sentencing hearing for the robbery conviction is moot.
[4] We note that transcripts of the proceedings conducted on October 16, 2003, and February 13, 2004, are, in fact, included in the record on appeal.
[5] We note that Hodges did not originally request that the transcript of the preliminary hearing be included in the record. The record reflects that Hodges requested and received funds to pay for his own court reporter for the preliminary hearing; the court reporter was Debbie Randall. (C. 48.) However, on the Reporter's Transcript Order, Hodges requested only those hearings for which Brenda Packer was the court reporter.
[6] See Part V of this opinion.
[7] Moreover, as explained in Part V of this opinion, Hodges's argument in this regard fails to comply with Rule 28(a)(10), Ala. R.App.P.; thus, it is deemed to be waived for purposes of appellate review.
[8] Hodges also states in his brief that "[t]he trial court failed to conduct a competency hearing to determine Hodges'[s] competency." (Hodges's brief at p. 24.) However, Hodges makes no argument in support of this single sentence. Rather, his entire argument is centered on the propriety of the trial court's finding that he was competent. Therefore, to the extent that Hodges intended to argue on appeal that the trial court erred in not conducting a competency hearing, he has failed to comply with Rule 28(a)(10), Ala.R.App.P., and that argument is deemed to be waived.
[9] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).
[10] See Part III of this opinion.
[11] Dr. Boyer did not testify at trial. See Part V of this opinion.
[12] The testimony at the suppression hearing was conflicting on this point. Deputy Tommy Reese testified that he transported Hodges to the sheriff's department the night of September 1, 2000, and that Agent Tubbs interviewed Hodges at that time. According to Deputy Reese, Agent Tubbs spoke with Hodges briefly, asking only whether Hodges, living across the street from the crime scene, had seen anything that day. However, Agent Tubbs testified that he did not interview Hodges at the sheriff's department that night. According to Agent Tubbs, by the time he arrived at the sheriff's department, Hodges had already gone home.
[13] Hodges did not testify at the suppression hearing.
[14] With respect to the second claim, Hodges makes a passing reference to the Alabama Constitution, without any indication as to which part of the Constitution he is relying upon, and a passing reference to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. However, as noted in Part IV of this opinion, citations to only general propositions of law are not sufficient to satisfy Rule 28(a)(10).
* Note from the reporter of decisions: On June 17, 2005, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On August 5, 2005, that court denied rehearing, without opinion. On October 14, 2005, the Supreme Court denied certiorari review, without opinion (1041749).